Isaac Stone et al.

v.

I. V. Williamson et al.

1. Practice.—An affidavit entitled in the cause and sworn to before the clerk of the court in which the case is pending, should not be treated as a nullity because there was no formal venue.

2. Same.—It is the policy of the statutes of this State to favor amendments of pleadings for the promotion of justice.

3. Sale—Under power.—It is the settled doctrine of equity in this State that sales of land by a mortgagee or trustee under a power of sale without recourse to legal proceedings, will be zealously watched by courts of equity, and upon proof of the slightest fraud or unfair conduct, or a departure from the power, they will be instantly set aside.

Appeal from the Circuit Court of Cook county; the Hon. Murray F. Tuley, Judge, presiding. Opinion filed October 22, 1885.

Mr. W. C. Goudy, for appellants; that great strictness is required in the execution of powers of sale, particularly where the rights of third parties have not intervened, cited Rounsavell v. Crofoot, 4 Bradwell, 671; Longwith v. Butler, 3 Gilm. 33; Thornton v. Boyden, 31 Ill. 200.

Messrs. Grant & Brady, for appellees; that the amend-

ments proposed by the appellants were properly denied by the court, cited Hoyt v. Tuxbury, 70 Ill. 332; Goodbody v. Goodbody, 95 Ill. 456; 1 Daniell's Chy. Pr. 416.

McALLISTER, J. This was an appeal by the Stones from a decree of the court below, denying appellant's leave to file amendments to their bill, which were prepared and tendered, and dismissing their bill against appellees as filed, for want of equity. It appears that all the parties to the suit except appellee Phelps, were non-residents of this State; the Stones residing in Massachusetts, and appellee Williamson, in Pennsylvania; that June 17, 1875, the Stones being the owners in fee, in severalty, of three lots situate upon Quincy street, in Chicago, known as lots Nos. 122, 124 and 126, they, or Isaac Stone, borrowed $12,000 of Williamson, for which the former gave his note to the latter, payable in three years with interest, at the rate of eight per cent. per annum, payable semi-annually; and to secure which, both appellants executed to Phelps, as trustee, a deed of said lots of said date, which was duly acknowledged and recorded June 20, 1875, in the proper office; that said deed was in the usual form, and contained a power of sale authorizing said trustee, in case of default, at the request of the holder of said note, to sell said premises at public auction, for cash, at one of the doors of the court house, etc., "after having first published a notice of the time and place of such sale, in some newspaper, at the time published in the English language, in said city of Chicago, for thirty days before the day of such sale, or such sale may be conducted by the acting sheriff of Cook county, or the person named herein, according to the provisions of the statute of the State of Illinois, in relation to mortgages, approved March 26, 1874, in force July 1, 1874." It appears that there was a sale of the premises, at least in form, by the trustee, Dec. 22, 1878, after the maturity of the note, all the principal and $480 in interest remaining unpaid; that the sale was preceded by a notice of the time and place, published in the Chicago Legal News, a weekly paper, in each issue for four successive weeks, the first being Nov. 9, 1878, and the last Nov. 30,

same month; that the holder of the note, Williamson, purported to have been the highest bidder, his bid being $9,000, to whom Phelps, the trustee, executed a deed, which was recorded.

The rights of no third party having intervened, and no change having been effected or taken place as respected the relations of debtor and creditor and mortgagors and mortgagees between the Stones and Williamson, except what may have been occasioned by the alleged sale, the former brought this bill against the latter and Phelps, August 11, 1883, for the purpose of being permitted to redeem the premises from said trust deed or mortgage, by paying all that may be found to be lawfully due to said Williamson. The facts set forth as the grounds for the relief, were, in substance, that the notice was not in compliance with the terms of the power ; that the trustee failed to offer two of the lots together on receiving no bid for either lot offered separately ; and an agreement that the Stones should have the privilege of redeeming. There were answers traversing all such allegations, and the case was heard on bill, answers, replication and proof. It appeared in evidence that there was a building on the lots which are located in the vicinity of the new building of the Chicago Board of Trade ; that the building on the Stone property was brick, and three stories in height, with basement ; that only two days before the trust deed to Williamson was made, the Stones paid $37,000 for the property ; that while property there had been affected as to value by the panic, and did not command a ready sale or high price at the time of the alleged sale by Phelps, under the trust deed, yet, it being favorably located, with a good promise for the future, it was, in a comparatively short time after such sale, worth some five times as much as Williamson got it for, and who still holds Stone's note, with a deficiency of $3,500 remaining due upon it. It appears that prior to giving the notice of sale, Phelps, on representation that the act might secure friendly consideration from Williamson, induced the Stones to permit him, Phelps, to take possession of the premises and collect the rents for Williamson. There were circumstances in evidence which want of space will not permit us to detail, but

which clearly tend to show collusion between Williamson and Phelps, the trustee, to cut off the equity of redemption of the Stones, and put the title in Williamson for as much as practicable, less than the amount of the indebtedness secured ; which tended to show that Phelps, the trustee, whose duty it was to stand indifferent between the parties, was actuated by a zealous interest in behalf of Williamson alone.

On the hearing, Phelps was a witness on his own and Williamson's behalf ; upon his cross-examination, facts and circumstances were testified to by him, which clearly tended to show that the alleged trustee sale, by him, under the above mentioned power, was no fair sale at auction; and, indeed, that in a view of a court of equity, it could not be regarded as a sale at auction, within the terms of said power. But such facts, being unknown to the Stones or their solicitor, were not alleged in the bill; therefore, no relief could be based upon them. Said solicitor thereupon prepared amendments to the bill in due form, and with an affidavit showing want of previous knowledge of such facts, asked leave to file said amendments. But, on objection by appellee's counsel, that there was no venue to the affidavit, the court refused the leave asked, and dismissed the bill for want of equity. There was, it is true, no formal venue to the affidavit. That circumstance was urged by appellee's counsel here, as justifying the action of the chancellor. There is no room for doubt, from the record and the argument of appellee's counsel here, that the chancellor refused the leave to amend, on account of that defect in the affidavit, and that in acting upon the objection of appellee's counsel, he was misled. Because the facts showing that the complainants would have been entitled to relief, if the bill had been differently framed, appearing in the testimony of Phelps, no affidavit was necessary. Booth v. Wiley, 102 Ill. 84.

But we think it too technical to treat the affidavit as a nullity, because there was no formal venue. It was properly entitled in the cause, and was sworn to before the clerk of the court wherein the cause was pending. Harris v. Lester, 80 Ill. 307.

It is strenuously insisted by appellee's counsel, that inasmuch as the law has invested the chancellor with discretionary power as regards amendments, this court can not revise his action in that regard in this case. It is the policy of the statutes of this State, to favor amendments of pleading for the promotion of justice. That policy has broadened in proportion to the declension suffered by the legal profession, in the science or art of pleading.

Now, the granting the right to the Stones to redeem on the terms proposed, imposes no hardship upon Williamson, the lender of the money; to deny it, subjects the borrowers to a ruinous sacrifice of a very valuable estate. It is the settled doctrine of equity in this State, that inasmuch as sales of land by a mortgagee or trustee, under a power of sale, without recourse to legal proceedings, are liable to abuse, they will be jealously watched by courts of equity, and upon proof of the slightest fraud or unfair conduct, or a departure from the power, they will instantly be set aside. Longwith v. Butler, 3 Gilm. 32; Burr v. Borden, 61 Ill. 389; Rounsavell v. Crofoot, 4 Bradwell, 671.

Did not the facts which were elicited on the hearing, and embraced in the proposed amendments, tend to entitle the complainants to relief under the above rules? We think they did; especially when taken in connection with the other facts as to the conduct of the trustee. We think it clear, too, that the chancellor was misled, and acted under a misapprehension as to the affidavit. In such a case as this, then, if there can no precedent be found as to the province of an appellate court, to correct such an error in the interest of justice, we think it our duty to make one. The decree of the court below will be reversed and the cause remanded with leave to the complainants to amend their bill.

Decree reversed.